IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JESSE ROMERO, on behalf of himself and
all others similarly situated,

Plaintiffs,

v. No. 1:17-cv-00775-KG-SCY

TITLEMAX OF NEW MEXICO, INC.,
TMX FINANCE LLC, and TRACY YOUNG,

Defendants.

**REPLY IN SUPPORT OF**
**TITLEMAX'S MOTION TO COMPEL PLAINTIFF TO ARBITRATE AND TO ENFORCE THE ARBITRATION CLAUSE AS TO ALL PROPOSED CLASS MEMBERS WHO DID NOT OPT OUT OF THE ARBITRATION CLAUSE AND TO STAY ALL PROCEEDINGS OR, IN THE ALTERNATIVE, TO STAY ALL CLASS ACTION RELATED DISCOVERY AND PROCEEDINGS**
**UNTIL THIS MOTION IS DECIDED**

Mr. Romero's Response does not address the issues raised in TitleMax of New Mexico, Inc.'s ("TitleMax") Motion. What Mr. Romero cannot do is avoid the fact that he agreed to arbitrate two of his Loan Agreements, agreed twice not to be a class representative, and agreed twice never to be a class member in raising disputes or claims under the form of the Loan Agreement at issue. Despite that, he seeks to avoid his contractual agreements with TitleMax and circumvent his arbitration commitments. This, the law should not and does not permit. Instead, the "strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration" requires that the relief sought in TitleMax's Motion be granted. *See Metz v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 39 F.3d 1482, 1488-89 (10th Cir. 1994); *see also, Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) ("Congress declared a national policy favoring arbitration.").

This strong federal policy favoring arbitration requires the Court to order arbitration as to any and all proposed class members, including Mr. Romero, that did not opt out of the arbitration clause and should stay the remainder of the case to see if anything is left to be decided subsequent to Mr. Romero's arbitrating his disputes as to his first two Loan Agreements with TitleMax[1]. As an alternative basis, the Court should order arbitration of all matters in this case because Mr. Romero's first and second Loan Agreements included the agreement to arbitrate all "extensions," "renewals," and "refinancings." Only if there remains anything for this Court to adjudicate after the arbitrable issues are decided should the Court adjudicate anything under the third Loan Agreement. For the Court to do otherwise would violate the strong federal policy encouraging the expeditious and less expensive resolution of disputes through arbitration. "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). New Mexico state courts also view arbitration as a highly favored method of resolving disputes "in part because 'it promotes judicial efficiency in conservation of resources by all parties.'" *Piano v. Premier Distributing Company*, 2005-NMCA-018, ¶ 5, 137 N.M. 57, 107 P.3d 11, 13; *Cornoyer v. AT&T Mobility Services, LLC*, 2016 WL 6404853 at *8; and *La Frontera Center, Inc. v. United Behavioral Health, Inc.*, 2017 WL 3172723 at *17.

Mr. Romero's Response sidesteps and fails to respond to the real issues in the Motion, 1) whether existing case law requires the motion to compel arbitration of all putative class members (who took out a loan agreement and did not opt out of the arbitration provision, including Mr.

[1] The term "Loan Agreement" is used herein to indicate the document that contains the terms and conditions governing the transaction. The pertinent document itself is entitled "Loan Agreement." Plaintiff (and proposed class representative, Jesse Romero) and TitleMax entered into three (3) separate Loan Agreements on July 19, 2016, August 6, 2016 and May 15, 2017, each of which contain an Arbitration Clause.

Romero himself) to be decided at this juncture, 2) whether there is any legal basis for this Court to deny the Motion to Compel Arbitration as to those non-opt out class members, including Mr. Romero, and 3) whether the Federal Arbitration Act's ("FAA's") requirement that this Court stay these proceedings if the Motion to Compel Arbitration is granted should be enforced. As these are controlling issues in the Motion left unaddressed by Mr. Romero, the Court should grant those portions of the Motion and stay this proceeding. *See* D.N.M.LR 7.1(b). In addition, the strong federal policy favoring arbitration requires arbitrating disputes Mr. Romero has under prior Loan Agreements (that he did not opt out of) first before litigating the same disputes under a later Loan Agreement. Further, although Plaintiff suggests his third Loan Agreement was not a refinancing, he does not deny that the arbitration provision he did not opt out of in his second Loan Agreement clearly applies to any refinanced loan. Thus, a refinanced loan is clearly within the scope of the Loan Agreement's Arbitration Clause. Mr. Romero only disputes whether the term "refinancing" in the first and second Loan Agreements is ambiguous and if so, what the parties intended it to mean, both of which are issues to be decided by an arbitrator. Finally, Mr. Romero's unconscionability arguments have already been disposed of by courts of competent jurisdiction and the argument that the opt out provision is illusory is unmeritorious as a matter of law and fact.

## I. MR. ROMERO'S FAILURE TO RESPOND TO THE MOTION TO COMPEL'S RELIEF REQUESTED REQUIRES GRANTING OF THE MOTION

Mr. Romero's failure to address three critical components of TitleMax's Motion requires it to be granted. Nowhere in the Response does Mr. Romero dispute that TitleMax was required to bring this Motion to Compel Arbitration at this juncture as to all members of the proposed class, including Mr. Romero himself, who did not opt out of the arbitration clause in their respective loan agreements. Likewise, Mr. Romero presents no argument or authorities as to why this Court should not order all putative class members who did not opt out of arbitration, including Mr.

Romero, to arbitrate any disputes each may have with the TitleMax Loan Agreement. Finally, Mr. Romero ignores the Motion's request for a stay, as required by the FAA, when a motion to compel arbitration is being considered and if it is granted. The Rules of the United States District Court for the District of New Mexico states that "the failure of a party to file and serve a response in opposition to a motion within a time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR 7.1(b). Furthermore, it is well established that arguments that are not made in a party's briefing are waived, presuming the party had the opportunity to raise those arguments. *See e.g. Anderson v. U.S. Department of Labor*, 422 F.3d 1155, 1182 (10th Cir. 2005); *see also*, *Marshall v. Columbia Lea Regional Hospital*, 474 F.3d 733, 739 (10th Cir. 2007).

In *Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litigation v. Cox Communications, Inc.*, 790 F.3d 1112 (10th Cir. 2015) at 1116, the Court held that although arbitration provisions are favored and are to be enforced, such provisions are waived when defendants wait until after the district court proceeds with the case. This Circuit, other federal circuit courts, district courts, and the New Mexico Court of Appeals all require TitleMax to bring this Motion at this juncture so as to avoid a waiver of the arbitration clause as to any dispute under any agreement wherein the borrower (and any putative class member) did not opt out. Each of the cases cited on pages 10 and 11 of TitleMax's Motion set forth in ample detail that this issue needs to be raised and decided at this time. As such, this Court is required, based on these judicial authorities and Mr. Romero's consent (by failing to respond to this argument), to consider this Motion at this point in the proceedings.

Mr. Romero also consented to, and the law requires, that this Court under the FAA (and the strong federal court policy favoring arbitration) compel arbitration as to all putative class members who did not opt out of the arbitration clause. Because Mr. Romero does not refute the

proposition that in his first two Loan Agreements he agreed to arbitrate his disputes as to these identical Loan Agreements, the Motion to Compel should be binding on him. Mr. Romero also does not dispute the fact that the claims in his Complaint are claims that all the putative class members, including himself, had under their identical TitleMax Loan Agreements. Mr. Romero's failure to address Section III (pp. 12-19) of the Motion to Compel Arbitration as to any proposed class member who did not opt out of the arbitration clause is a consent to the relief sought as to all putative class members, including himself, who did not opt out. As to those individuals, Mr. Romero does not dispute that 1) the arbitration clauses are valid and 2) his claims are squarely within the scope of those Loan Agreements. Not only has Mr. Romero consented by application of Local Rule 7.1(B) to the entry of an order to compel arbitration, but the authorities cited in Section III of the brief require the same result. The Motion to Compel must be granted as requested as to all putative class members, including Mr. Romero himself, who did not opt out of the arbitration provision.

Finally, Mr. Romero has also consented, by his failure to respond, to this Court entering a stay of the proceedings if the motion to compel arbitration is granted. Furthermore, the FAA requires that result. As Judge Browning has recently decided:

> Upon a finding that a matter is referable to arbitration, the FAA also indicates that the district court "shall on application of one of the party's stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

*See La Frontera Center, Inc. v. United Behavioral Health, Inc.*, ---F.Supp.3d----, 2017 WL 3172723 at *16.

Although, Mr. Romero argues that he did opt out of the third Loan Agreement's Arbitration Clause, he does nothing to refute any of this well-established controlling law and, as such, he has either waived or consented that the requested relief sought should be ordered by the Court.

## II. THE STRONG FEDERAL POLICY FAVORING ARBITRATION ALSO REQUIRES ARBITRATING THE DISPUTES MR. ROMERO HAS UNDER HIS TWO PRIOR LOAN AGREEMENTS

The federal court's strong policy favoring arbitration requires that an arbitrator decide and determine whether the form of Loan Agreement that Mr. Romero entered with TitleMax is unconscionable because he agreed to arbitrate those issues twice. Obviously, if the arbitrator decides that dispute in Mr. Romero's favor, then there is no need for this Court to proceed any further. If the arbitrator decides that the language of the Loan Agreement does not create a claim for Unfair Trade Practices or any of the other claims set forth by Mr. Romero, then that decision is binding on him as well and there is no need for this Court to proceed further. However, if there is anything left after the arbitrator decides the issues presented, Mr. Romero can at that point move the Court to decide any remaining issues based solely on the language of his third Loan Agreement. By permitting Mr. Romero to pick and choose which of his three Loan Agreements he will use to raise the identical dispute, even though he has not opted-out of the arbitration provision in two of them, would allow Mr. Romero to circumvent this strong federal policy favoring arbitration.

Furthermore, under Section 4 of the FAA, a party "aggrieved" by the failure of another party "to arbitrate under a written agreement for arbitration" may petition a federal court "for an order directing that such arbitration proceed in the manner provided for in such agreement." There is no question, and Mr. Romero agrees, that he has the identical dispute under each of his Loan Agreements. Therefore, TitleMax is an "aggrieved" party seeking "to arbitrate under a written agreement (the second Loan Agreement) for arbitration," Mr. Romero's disputes. Because the law favors arbitration and TitleMax is a party aggrieved by the failure of another party to arbitrate under a written agreement between the two, the motion to compel arbitration of Mr. Romero's claims is favored by the federal courts. Of course, the failure of the Court to determine in

TitleMax's favor that it is "a party aggrieved" by the failure of Mr. Romero to arbitrate his disputes, is subject to immediate review. *KPMG, LLP v. Cocchi*, 565 U.S. 18, 22, 132 S.Ct. 23, 26, 181 L.Ed.2d 323 (2011).

Finally, the legal principle of estoppel requires Mr. Romero to arbitrate. Courts have estopped signatories from evading arbitration with a non-signatory where the signatory had entered into written arbitration agreements with affiliates of those parties because otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted. *See La Frontera, supra* *37. *See also MS Dealer Service Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999). Indeed, as has been pointed out by the New Mexico District Court, "Several Circuits have prevented a signatory from avoiding arbitration with non-signatories "when the issues the non-signatories seeking to resolve in an arbitration are intertwined with the agreement that the estopped party has signed."" *See La Frontera Center, Inc., supra*, *35. Even a non-party "is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause." *Damon v. StucSure Home Warranty, LLC,* 2014-NMCA-116, ¶ 11, 338 P.3d 123, 126. It stands to reason then that where, as here, Mr. Romero signed not one but two Loan Agreements that have precisely the same language (and are so intertwined with his dispute) that he should be estopped from arguing that he is not bound to arbitrate his disputes under a third Loan Agreement (identical to the first two Loan Agreements). Otherwise, he would be rendering meaningless the federal policy favoring arbitration.

Furthermore, when the applicability of an arbitration is in dispute, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105

S.Ct. 3346, 87 L.Ed.2d 444. Here, if the Court has any doubt whether to compel Mr. Romero to arbitrate, such doubt should be resolved in favor of allowing the dispute to be arbitrated.

## III. AN ARBITRATOR SHOULD DECIDE WHETHER THERE IS ANY AMBIGUITY AS TO THE TERM REFINANCING IN THE SECOND LOAN AGREEMENT, ALTHOUGH THERE TRULY IS NOTHING TO DECIDE

Mr. Romero's attempt to have this Court interpret the meaning of a word used in his second Loan Agreement is improper. The dispute that Mr. Romero raises is not whether the scope of the clause includes an "extension" "renewal" or "refinancing," because the Loan Agreement clearly so states. Mr. Romero is only questioning whether the term "refinancing" is ambiguous in the context of what he admittedly agrees was a "roll over" of the second loan, which "reset the payment period out another twenty-four months." (*See* ¶ 33 of the First Amended Complaint [Doc. 21]).[2] However, it is the arbitrator, not the Court, who is to determine whether the term "refinancing" in Mr. Romero's first or second Loan Agreements is ambiguous and, if so, what the parties intended it to mean. Thus, the first and second Loan Agreements require him to arbitrate whether the term in those Loan Agreements is ambiguous because he agreed to arbitrate disputes pertaining to those Loan Agreements. Where the parties agree to arbitrate, "it is the arbitrator's construction (of the contract) which was bargained for: and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 599, 80 S.Ct. 1358. The arbitrator's construction holds however good, bad, or ugly. *Oxford Health Plans, LLC v. Sutter*, 133 S.Ct. 2064, 2070-71, 186 L.Ed.2d 113 (2013).

This Court has no business interpreting whether or not Mr. Romero's second Loan Agreement is ambiguous as to the term "refinancing" and, if so, what the parties intended by that

---

[2] Mr. Romero likewise indicates that his second Loan Agreement was a "refinancing" or roll over of his first Loan Agreement. (*See* Amended Complaint, ¶¶ 31-32.)

term. The term is clearly not ambiguous and Mr. Romero does not provide any reasonable alternate meaning that the term could have other than that it would ineluctably apply to a "roll over" of a loan to "reset the payment period." The Random House Webster's College Dictionary defines refinance as: "1) to finance again, 2) to satisfy (a debt) by making another loan on new terms, 3) to arrange new financing for something." As Mr. Romero agreed that the total amount of the loan and interest on the first and second Loan Agreement was not ever paid off and the third Loan Agreement was used to pay off the debt of the second Agreement, this was, by definition, a refinancing. Thus, whether the Court or arbitrator decides the issue of whether the term is ambiguous, the conclusion must be the same. The term is simply not ambiguous. Furthermore, when the applicability of arbitration is in dispute, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444. Here, if the Court has any doubt whether the term "refinance" is ambiguous, any doubt should be resolved in favor of allowing the dispute to be arbitrated.

## IV. MR. ROMERO'S FINAL ARGUMENTS REGARDING INTERPRETATION UNDER STATE LAW OF THE CONSCIONABILITY OF THE ARBITRATION CLAUSE HAVE BEEN DECIDED AGAINST ROMERO

Mr. Romero's final argument is that the arbitration provision TitleMax employs is unconscionable as a matter of New Mexico law and is therefore unenforceable, even though clear United States Supreme Court cases state to the contrary. Plaintiff admits that this Court must follow U.S. Supreme Court precedent and that he makes this final argument only to "preserve" it. Mr. Romero does not alert this Court that the Supreme Court's decision, contrary to his view, is now more than 30 years old and that the cases that have followed it have consistently and continually reinforced the fact that the FAA should apply in state court as well as federal court.

Similarly, Mr. Romero's contention that the Arbitration Clause is illusory has no merit under the FAA or New Mexico contract law. Under general New Mexico contract law only an agreement that is subject to unilateral modification or revocation is "illusory and unenforceable." *Salazar v. Citadel Communications Corp.*, 2004-NMSC-013, ¶ 9, 135 N.M. 447, 90 P.3d at 469. This principle applies equally to agreements to arbitrate. *Id.* The Supreme Court of New Mexico has concluded that if a party reserves the right to change the agreement unilaterally (and at any time) the party is not really promising anything at all and should not be permitted to bind the other party. *Id.* In *Salazar*, the Supreme Court held that because Citadel Communications reserved the right to modify any provision of its employee handbook at any time, including the arbitration agreement contained therein, the agreement to arbitrate was an unenforceable illusory promise. *See Salazar* at ¶ 16. In contrast, the Court of Appeals of New Mexico in *Sisneros v. Citadel Broadcasting Company*, 2006-NMCA-102, ¶ 34, 140 N.M. 266, 142 P.3d at 43, found that the agreement at issue restricted Citadel Broadcasting's right to terminate or amend the agreement to arbitrate and thus, when Citadel Broadcasting terminated Sisneros' employment, Citadel Broadcasting was bound to arbitrate the dispute, just as Sisneros was bound to arbitrate. Therefore, mutual obligations existed and the arbitration agreement was not illusory.[3]

[3] Should this Court decide to refuse to enforce the arbitration agreements entered into between Mr. Romero and TitleMax (in his first and second Loan Agreements) it would place this Court squarely at odds with the decisions of other federal courts who have decided that issue. Specifically, both the United States District Court for the Northern District of Georgia and the United States District Court for the Eastern District of Missouri have entered well-reasoned decisions specifically enforcing identical arbitration clauses in TitleMax's favor. In *Jones v. TitleMax of Georgia, Inc.*, 2006 WL 562189 (March 7, 2006), Judge Thrash adopted the Report Recommendation of the United States Magistrate Judge Hagy in ordering that the plaintiff in that case be compelled to arbitrate his title lending and unconscionability claims against TitleMax, and staying the federal court litigation pending the conclusion of that arbitration. Likewise, just over a year ago, United States District Judge Ross of the United States District Court for the Eastern District of Missouri reached the same conclusion in the matter of *Jones v. TitleMax of Missouri, Inc.*, 4:15-CB-01361-JAR (August 5, 2016) (Doc No. 21). Confronted with a complaint alleging virtually indistinguishable claims as here of unconscionability and unfairness, including claims that TitleMax's arbitration clause was unconscionable, that court, consistent with the precedence of the United States Supreme Court, compelled arbitration, just as this Court should do.

As applied to this case, the Arbitration Clause cannot be deemed illusory since TitleMax did not reserve the right to modify the provision at any time. TitleMax in this case is not contending that Mr. Romero could not enforce the Arbitration Clause. TitleMax does not and has not sought to modify unilaterally the Arbitration Clause. The clause itself gives TitleMax no ability to modify it at any time. TitleMax simply seeks to enforce the agreement as to any party or putative class member that did not opt out of the Arbitration Clause. Consideration for the mutual agreement to arbitrate has been established. The Tenth Circuit Court of Appeals has held that, "The reciprocal obligation to arbitrate provides the requisite consideration." *Pennington v. Northrop Grumman Space*, 269 Fed.Appx. 812, 820 (10th Cir. 2008).

A review of the cases cited by Mr. Romero to suggest that the Arbitration Clause is illusory do not stand for the proposition for which Mr. Romero offers them. A careful review of those cases indicates that the arbitration clauses at issue were not held to be illusory only because a few people opted-out, but instead, because the Court "ha[d] already determined for Rule 23 purposes that the opt out clause is highly inconspicuous, and the opt out procedure is extremely onerous." *See Mohamed v. Uber Technologies, Inc.*, 109 F.Supp.3d 1185 at 1205. The Court explained that the "opt out provision is buried in the agreement," "is ensconced in the penultimate paragraph of a fourteen-page agreement," that the entire agreement was presented "electronically in a mobile phone application interface," and "that those drivers who actually discovered the opt out clause (if any) could only opt out in writing either hand delivered to liber's [sic] office in San Francisco or delivered by a "nationally recognized overnight delivery service." *Id.* at 1205-1206. No such circumstances exist here—the opt out clause was not buried in the Loan Agreement and was actually found and utilized on one occasion by Mr. Romero. Mr. Romero has no basis to claim

that the opt out provision is illusory under New Mexico law or the law Mr. Romero cites for that proposition.

## V. CONCLUSION

Unrefuted law requires that the Motion to Compel Arbitration must be filed at this juncture, that the Motion to Compel Arbitration is proper and appropriate and that an order be entered compelling arbitration as to any person, including Mr. Romero, who did not opt out of the Arbitration Clause, and that a stay should be entered until Mr. Romero's disputes have been arbitrated. The Court should so order.

Respectfully submitted,

ATKINSON, BAKER & RODRIGUEZ, P.C.

*/s/ Douglas A. Baker*

Douglas A. Baker
Justin D. Rodriguez
201 Third St. NW, Suite 1850
Albuquerque, NM 87102
(505) 764-8111
dbaker@abrfirm.com
jrodriguez@abrfirm.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 29th day of September, 2017, I filed the foregoing *Reply in Support of TitleMax's Motion to Compel Plaintiff to Arbitrate and to Enforce the Arbitration Clause as to All Proposed Class Members Who Did Not Opt Out of the Arbitration Clause and to Stay All Proceedings or, in the Alternative, to Stay All Class Action Related Discovery and Proceedings Until This Motion is Decided* electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Scott Fuqua
Fuqua Law & Policy, P.C.
P.O. Box 32015
Santa Fe, NM 87594
(505) 982-0961
scott@fuqualawpolicy.com

Jack E. McGehee
H.C. Chang
Stephen A. Barnes
Benjamin T. Landgraf
McGehee, Chang, Barnes, Landgraf
10370 Richmond Ave., Suite 1300
Houston, Texas 77042
(713) 864-4000
jmcgehee@lawtx.com
hcchang@lawtx.com
sbarnes@lawtx.com
blandgraf@lawtx.com

*Attorneys for Plaintiff*

ATKINSON, BAKER & RODRIGUEZ, P.C.

*/s/ Douglas A. Baker*
Douglas A. Baker