IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JESSE ROMERO, on behalf of himself
and all others similarly situated,

    Plaintiffs,

    vs.                                                No. CV 17-775 KG/SCY

TITLEMAX OF NEW MEXICO, INC.,
TMX FINANCE, LLC, and TRACY YOUNG,

    Defendants.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant TMX Finance, LLC ("TMX") and Defendant Tracy Young's Second Motions to Dismiss for Lack of Personal Jurisdiction Pursuant to Rules 12(b)(2) and 12(b)(6), both filed September 29, 2017. (Docs. 32 and 33).[1] Plaintiff filed responses to the Motions to Dismiss on October 23, 2017, (Docs. 43 and 44), and Defendants TMX and Young filed replies on November 17, 2017, (Docs. 48 and 49). Having considered the parties' briefing, the record of the case, and the applicable law, the Court denies both Motions to Dismiss.

I.    *Background*

Plaintiff Romero initiated this action in New Mexico state court on June 20, 2017, against Defendants TitleMax of New Mexico, Inc. ("TitleMax"), TMX Finance, LLC, and Tracy Young. (Doc. 1) at 1-2. Plaintiff alleges that Defendants' loan business violates New Mexico consumer

---

[1] The Court dismissed as moot Defendants TMX and Young's First Motions to Dismiss because they were based on Plaintiff's original Complaint. *See* (Doc. 75) (dismissing as moot Docs. 12 and 14). Defendants TMX and Young's Second Motions to Dismiss are filed in response to Plaintiff's Amended Complaint, (Doc. 21).

protection statutes and common law consumer protection principles, and he seeks certification of a class defined as "all New Mexico citizens who have taken out a loan from Defendants since March 11, 2013." (Doc. 21) at 15 (Amended Complaint). Specifically, Plaintiff alleges Defendants' loan practices violate the New Mexico Unfair Trade Practices Act, NMSA 1978, § 57-12-3, and common law procedural and substantive unconscionability. *Id.* at 16-22. Defendants timely removed the case to this Court pursuant to 28 U.S.C. § 1332(d) (jurisdiction based on the Class Action Fairness Act) and 28 U.S.C. § 1332(a) (traditional diversity jurisdiction). (Doc. 1) at 3-17.

Plaintiff's claims arise from three loans he took out on July 19, 2016, August 4, 2016, and May 15, 2017. (Doc. 9). On May 2, 2018, the Court granted TitleMax's Motion to Compel Arbitration as to the first two loans. (Doc. 58). TitleMax appealed that decision and on February 5, 2019, the Tenth Circuit Court of Appeals affirmed the Court's order compelling arbitration for loans one and two. (Doc. 72). Consequently, the Court stayed this case pending arbitration of those loans. (Doc. 71). On November 11, 2019, the Arbitrator, John A. Darden, issued a decision finding the loans did not violate the New Mexico Unfair Trade Practices Act and were not unconscionable, and he dismissed Plaintiff's claims as to the first and second loan agreements. (Doc. 73). Accordingly, this case is ready to proceed as to Plaintiff's third loan agreement and Defendants TMX and Young's Second Motions to Dismiss are ready for ruling. (Doc. 74) (parties' Joint Status Report).

In their Motions to Dismiss, Defendants TMX and Young argue that this Court does not have general or specific jurisdiction over them because they do not have sufficient minimum contacts with New Mexico. (Docs. 32 and 33). Plaintiff responds that Defendants TMX and Young have sufficient jurisdictional contacts with New Mexico through their regional subsidiary,

TitleMax, over which they hold highly concentrated power and control.  (Docs. 25, 26, 43, and 44).[2]

    II.    Discussion

        *A. Standard*

This Court must have personal jurisdiction over Defendants to adjudicate Plaintiff's claims against them.  *See Walden v. Fiore*, 571 U.S. 277, 283 (2014) ("The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts.").  Plaintiff bears the burden of establishing personal jurisdiction, but in the preliminary stages of litigation this burden is "light" such that Plaintiff "is only required to establish a *prima facie* showing of [personal] jurisdiction."  *Doe v. Nat'l Med. Serv.*, 974 F.2d 143, 145 (10th Cir. 1992); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).  Plaintiff may make a *prima facie* showing of personal jurisdiction "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *OMI Holdings Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).  The complaint's well-pled factual content "must be accepted as true if uncontroverted by the defendant's affidavits," and "factual disputes … must be resolved in the plaintiff's favor when the parties present conflicting affidavits."  *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).  However, Plaintiff must "support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are

---

[2] In response to Defendants TMX and Young's Second Motions to Dismiss, Plaintiff incorporates by reference his responses to their First Motions to Dismiss.  (Docs. 25 and 26) (filed in response to Docs. 12 and 14).

challenged by an appropriate pleading." *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).

In a diversity action, such as this one, a federal court has personal jurisdiction over nonresident defendants only to the extent that the forum state's long-arm statute permits. *See Fid. and Cas. Co. v. Philadelphia Resins Corp.*, 766 F.2d 440, 442 (10th Cir. 1985). New Mexico's long-arm statute is coextensive with the 14th Amendment's Due Process Clause, such that if jurisdiction is permitted under the Due Process Clause, it is also authorized by the long-arm statute. *See Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006); *Tercero v. Roman Catholic Diocese of Norwich*, 2002-NMSC-018, ¶ 6, 132 N.M. 312. The 14th Amendment's Due Process Clause requires a plaintiff to establish that a nonresident defendant must have "such minimum contacts with the forum state that he should reasonably anticipate being haled into court there." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159-60 (10th Cir. 2010) (citation omitted). If a plaintiff makes such a showing, he must then establish that the exercise of personal jurisdiction over the nonresident defendant does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).

One type of jurisdiction over a defendant is "general jurisdiction," which arises if a defendant's contacts with New Mexico were so "continuous and systematic" that the court could exercise personal jurisdiction over it even if the underlying suit is unrelated to its contacts with the state. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532-33 (10th Cir. 1996). The other type of personal jurisdiction is "specific jurisdiction," such that the cause of action arises from a particular transaction of business or commission of a tortious act in which the defendant "purposely avails himself of the privilege of conducting activities within the forum

state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

### B. General Jurisdiction

Defendants TMX and Young contend the Court does not have general jurisdiction over them because Defendant TMX was formed in Delaware and its principal place of business is Georgia, and Defendant Young is neither a resident nor domiciliary of New Mexico. (Doc. 32) at 13; (Doc. 33) at 8. Plaintiff does not dispute these assertions and, instead, argues that the Court has specific jurisdiction over Defendants TMX and Young. (Docs. 25 and 26) at 1-2. Accordingly, the Court concludes there is no general jurisdiction over Defendants TMX or Young. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.") (citation omitted).

### C. Specific Jurisdiction

It is undisputed that there is jurisdiction over Defendant TitleMax. Plaintiff asserts the Court also has jurisdiction over Defendants TMX and Young because they are the alter egos or agents of TitleMax. Specifically, Plaintiff states that TMX is the parent company of TitleMax and that Defendant Young is "the founder, sole owner, chief executive officer and chairman of the board of TMX" and "the sole beneficial owner, chief executive officer and director of TitleMax." (Doc. 21) at 2. Because the alter ego and agency analyses are substantially similar, the Court will analyze them together. *See Weisler v. Cmty. Health Sys., Inc.*, 2012 WL 4498919, at \*12 (D.N.M.) (explaining under either agency or alter ego theory, court inquires whether parent corporation "dominat[ed] the day to day business decisions of the subsidiary and disregard[ed] the corporate entity of the subsidiary").

Generally, personal jurisdiction over a subsidiary corporation does not give personal jurisdiction over the parent corporation, even if the parent wholly owns the subsidiary. *Jemez Agency, Inc. v. CIGNA Corp.*, 866 F. Supp. 1340, 1343 (D.N.M. 1994); *see also Alto Eldorado P'ship v. Amrep Corp.*, 2005-NMCA-131, ¶ 32, 138 N.M. 607 ("[T]he mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state."). However, a court may deem a subsidiary the alter ego of a parent and pierce the corporate veil where: (1) "the parent's control goes beyond that normally exercised by a majority shareholder" and is "so complete as to render the subsidiary an instrumentality of the parent;" or (2) "the subsidiary does an act at the direction of the parent, or in the course of the parent's business." *Jemez Agency*, 866 F. Supp. at 1343; *see also Daimler AG*, 571 U.S. at 135, n. 13 ("A corporation is a distinct legal entity that can act only through its agents … . As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there.") (citations omitted). In other words, "the Court may properly invoke jurisdiction over a foreign parent company predicated on the acts of one of its subsidiaries if the parent company actually controls the subsidiary's day-to-day business decisions and disregards the subsidiary's business entity." *Quimbey by Faure v. Cmty. Health Sys., Inc.*, 2015 WL 13651236, at *8 (D.N.M.); *Berry v. Bryant*, 2012 WL 12819204, at *4 (D.N.M.) (explaining if parent's control is "so complete as to render the subsidiary an instrumentality of the parent, … the Court may deem the subsidiary the mere 'alter ego' of the parent, and accordingly, may pierce the corporate veil").

*1. Defendant TMX*

In support of its Motion to Dismiss, Defendant TMX presents affidavit evidence from Stephen Paris, Director of Regulatory Compliance for the TMX Finance Family of Companies. (Doc. 32) at 5-8; (Doc. 12-1).  Mr. Paris attests to the following about Defendant TMX: it is primarily a holding company to hold the stock of its subsidiaries; it does not maintain an internet website, does not direct any advertising or communication at residents of New Mexico, and does not provide any consumer products or services in New Mexico; it has no operating assets, employees, or property in New Mexico; it is not licensed to do business in New Mexico and has never paid taxes to New Mexico; and it does not have a registered agent in New Mexico.  (Doc. 12-1).  Mr. Paris further states Defendant TMX never engaged in loan underwriting or entered into a loan agreement in New Mexico or with a New Mexico resident.  *Id.*

In response, Plaintiff provides several exhibits to support a finding that TMX has subjected itself to this Court's jurisdiction.  First, Plaintiff attaches a Consent Order dated September 26, 2016, in which the United States Consumer Financial Protection Bureau ("CFPB") fined TMX $9,000,000 for "unfair and abusive practices in lending and debt collection" in relation to the business practices occurring in TMX's subsidiaries.  (Doc. 25) at 12; (Doc. 25-3).  Plaintiff emphasizes the CFPB fined TMX but did not separately fine its subsidiaries such as TitleMax, and that the Consent Order is signed only by TMX and not by TMX's subsidiaries.  (Doc. 25-4) at 4-5.  Plaintiff argues this exhibit demonstrates that TMX controls the business practices of its subsidiaries.

Second, Plaintiff provides examples of employee recruitment advertisements published online and targeted at New Mexico residents, in which TMX represented itself and TitleMax as one entity.  (Doc. 25) at 13; (Doc. 25-5).  In the advertisements, located at www.tmxcareers.com,

7

TMX states that it is hiring for its "newest TitleMax New Mexico locations," and that "TMX Finance has plans to continue expanding our footprint … including an additional six TitleMax locations in Albuquerque, N.M."  (Doc. 25-5) at 2.  Plaintiff argues these advertisements rebut TMX's assertion that it does not have any employees in New Mexico, it is merely the holding company for TitleMax, and it does not maintain an internet website or direct advertising to New Mexico residents.  (Doc. 25) at 14.

Next, Plaintiff provides responses sent to him by TMX in reply to his correspondence to TitleMax about his loan agreement.  (Doc. 25) at 14-15; (Doc. 25-6); (Doc. 25-7).  When Plaintiff alerted TitleMax that he sought to opt out of the arbitration and class action provisions of the loan agreement, it was TMX who responded, not TitleMax.  Plaintiff notes that these responses were made as a matter of course with no explanation as to why TMX was responding instead of TitleMax, and TMX engaged in evaluating the contractual rights between Plaintiff and TitleMax.  Plaintiff argues this correspondence demonstrates TMX acted as the same entity as TitleMax.  (Doc. 25) at 15.

Plaintiff also submits TMX's reports filed with the Securities and Exchange Commission ("SEC").  (Doc. 25) at 15-17; (Doc. 25-8); (Doc. 25-9); (Doc. 25-10).  Plaintiff points out language in these filings stating TMX is engaged in the origination and servicing of automobile title loans "through its subsidiaries," and is "a privately-owned automobile title lending company with 1,035 company-owned stores."  (Doc. 25) at 15; (Doc. 25-8).  Relatedly, Plaintiff notes that TMX does not file separate financial statements for its subsidiaries with the SEC, and that TitleMax shares the same corporate address, director, chief executive officer, and owner with TMX.  (Doc. 25) at 16-17.  With regard to shared debt, TitleMax is fully liable for TMX's debts and obligations, and "TMX represents that it enters into these credit facilities and issues debt

8

securities to meet the long-term capital needs of TitleMax, among others." (Doc. 25) at 16; (Doc. 25-10). Finally, Plaintiff alleges that in TMX's public filings it represents that operations are uniform across the nation and that it has uniform policies as to: customer contracts; minimum customer age; maximum loan amounts; underwriting decisions; credit checks; vehicle appraisals; credit reporting; vehicle title retention; methods of loan disbursements; required documents from customers; line release and title return procedures; delinquent account procedures; repossession protocols; and vehicle sales procedures. (Doc. 25) at 17; (Doc. 25-8). Plaintiff argues "[t]his level of categorical control … is indicative of active involvement in every meaningful facet of TitleMax's business, all the way down to dictating the day-to-day aspects of dealing with potential and existing customers." (Doc. 25) at 17.

Upon consideration of the evidence submitted by the parties, with conflicts construed in Plaintiff's favor, the Court concludes Plaintiff has presented a *prima facie* case that this Court has personal jurisdiction over TMX. *See Walker v. THI of New Mexico at Hobbs Center*, 801 F.Supp.2d 1128, 1139 (D.N.M. 2011) ("At this stage of the proceedings, it is not for the court to resolve disputed facts. Rather, the court must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.") (citation omitted). While TMX is correct that mere association with or ownership of TitleMax is insufficient to establish personal jurisdiction, Plaintiff has presented ample evidence that TMX has significant control of the day-to-day operations of TitleMax, including coordinating its business operations in New Mexico. TMX's advertisements directed at New Mexico residents, as well as TMX's responses to Plaintiff's communications with TitleMax regarding Plaintiff's contractual obligations, demonstrate involvement beyond that normally exercised by a mere holding company. In addition, the Court takes notice that Mr.

Paris is an employee of another TMX subsidiary—TitleMax of Georgia—and yet he states he is "authorized to speak on behalf of TMX Finance LLC." (Doc. 12-1) at 1. The Court finds this evidence establishes that TMX has sufficient contacts with New Mexico that it "should reasonably anticipate being haled into court" to answer for its business practices in this state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In addition to showing TMX has sufficient New Mexico contacts, Plaintiff has demonstrated that his claims arise from those contacts. Plaintiff's claims center on the business practices of TitleMax, which Plaintiff has demonstrated are directed by TMX through its uniform policies and procedures. Therefore, Plaintiff's claims arise from actions taken "in the course of" TMX's business. *Jemez Agency*, 866 F. Supp. at 1343 (explaining subsidiary can be considered alter ego of parent corporate where "the parent's control goes beyond that normally exercised by a majority shareholder" or "the subsidiary does an act at the direction of the parent, or in the course of the parent's business"); *see also Alto Eldorado P'ship*, 2005-NMCA-131, ¶ 36 (finding personal jurisdiction over parent where plaintiff's cause of action "lie[s] in the wake" of the parent corporation's control of its subsidiary); *Cantu v. TitleMax, Inc.*, 2015 WL 4526987, at *7-8 (W.D. Tex) (finding personal jurisdiction over parent TMX Finance, LLC, based on evidence it controls business operations of subsidiary TitleMax of Texas). For these reasons, the Court concludes Plaintiff has met his burden of demonstrating the Court has personal jurisdiction over Defendant TMX at this stage of the case.

    2. *Defendant Young*

In support of his Motion to Dismiss, Defendant Young submits an affidavit stating the following: he is a resident of Georgia; he does not own real or personal property in New Mexico; he does not maintain a mailbox, phone number, or bank account in New Mexico; he does not

work or live in New Mexico and has no business or business dealings in New Mexico; and he has never personally made a loan to any New Mexico resident or directed any activity involving a New Mexico resident. (Doc. 33) at 5-6; (Doc. 14-1). Defendant Young further states he does not participate in the day-to-day management of TitleMax and has not hired or supervised any TitleMax employee. (Doc. 33) at 7; (Doc. 14-1).

Plaintiff, however, asserts this Court has personal jurisdiction over Defendant Young because he "actively creates and implements the unfair and deceptive business practices of the entity defendants, controls said defendants, manages their course, and dictates the goals to be achieved." (Doc. 21) at 2. In support, Plaintiff submits TMX's filings to the SEC which state "Mr. Young has the ability to control substantially all matters of significance to the Company including the strategic direction of our business." (Doc. 26) at 11; (Doc. 25-8). Importantly, these filings define the "Company" as "TMX Finance LLC and its consolidated affiliates." (Doc. 25-8) at 2. The filings further state that Defendant Young has "complete beneficial ownership and control of the Company," TMX's executive officers serve at the pleasure of Defendant Young, and TMX's managers are subject to the authority of Defendant Young. (Doc. 26) at 11-12; (Doc. 25-8). In addition, Plaintiff notes Defendant Young's use of TMX's corporate aircraft for his own personal trips, which cost TMX $298,057 in 2012 alone, as disclosed in TMX's SEC filings. (Doc. 26) at 12; (Doc. 25-8). Plaintiff argues that these documents, together with Defendant Young's sole ownership of TMX and status as director and chief executive officer for both TMX and TitleMax, provide sufficient evidence of his contacts with New Mexico. Plaintiff additionally states that Defendant Young "formed TMX, designed the unfair practices, and controls TMX and TitleMax," and that "neither Plaintiff nor any

11

potential class member would have suffered injury but for TMX, through TitleMax, offering loans in the State."  (Doc. 26) at 13, n.4.

The Court concludes this evidence is sufficient for a *prima facie* finding that Defendant Young has sufficient New Mexico contacts and Plaintiff's claims arise from those contacts.  The Court has already determined that Defendant TMX availed itself of New Mexico courts' jurisdiction based on its control and oversight of TitleMax's business practices.  Accordingly, evidence that Defendant Young controls the strategic direction and business activities of TMX demonstrates Defendant Young has "purposely avail[ed] [him]self of the privilege of conducting activities within [New Mexico], thus invoking the benefits and protections of its laws."  *Hanson*, 357 U.S. at 253.  While Defendant Young argues his business activities were not directed at New Mexico and are not related to Plaintiff's claims, Plaintiff's claims are nevertheless based on TitleMax's business practices which are under the control and direction of Defendant TMX and, in turn, Defendant Young.  The Court notes that New Mexico courts have expressly found that "New Mexico exercises personal jurisdiction to the full extent the constitution allows," and if an individual or entity is a "primary participant in the alleged wrongdoing intentionally directed at the forum state, he or she will be subject to personal jurisdiction."  *Albuquerque Facility, LLC v. Danielson*, 181 F.Supp.3d 924, 931-32 (D.N.M. 2016) (explaining New Mexico has limited application of the "fiduciary or corporate shield" doctrine for officers, directors, or employees of a company in the context of personal jurisdiction analysis) (quoting *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 49, 131 N.M. 772); *see also Niemi v. Lasshofer*, 770 F.3d 1331, 1349-50 (10th Cir. 2014) (explaining if nonresident individual or entity is "primary participant in alleged wrongdoing intentionally directed at" residents of the forum state, he or she

will be subject to personal jurisdiction regardless of that person's status as officer, director, agent or employee) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

Based on the foregoing, the Court concludes Plaintiff has made a sufficient *prima facia* showing that the Court has personal jurisdiction over Defendant Young.

### D.  Fair Play and Substantial Justice

The second part of the due-process analysis asks whether the exercise of personal jurisdiction would be reasonable or whether subjecting the nonresident defendant to jurisdiction in the forum state would offend traditional notions of fair play and substantial justice. *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010).  Once a Plaintiff has satisfied its minimum-contacts burden, the burden shifts to the defendant to demonstrate that exercising personal jurisdiction would be unreasonable. *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013).  This inquiry requires the examination of five factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

With this guidance in mind, the Court determines that the balance of the five factors weighs in favor of exercising personal jurisdiction over Defendants TMX and Young.  First, because Defendants TMX and Young are located in Delaware and Georgia, litigating this action in New Mexico will impose some burden.  However, "defending a suit in a foreign jurisdiction is not as burdensome as in the past," especially for sophisticated parties. *Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir. 1982); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) ("[M]odern transportation and communications have made it much less

burdensome for a party sued to defend himself in a State where he engages in economic activity."). Moreover, Defendants TMX and Young have retained the same local counsel as TitleMax, which lessens their burden. *See Speridian Tech., LLC v. Applications Software Tech. Corp.*, 2015 WL 13047933, at *5 (D.N.M.) (finding nonresident's retention of New Mexico law firm and New Mexico's mandatory electronic filing system weigh in favor of finding jurisdiction over nonresident defendant); *Fabara v. GoFit, LLC*, 308 F.R.D. 380, 407 (D.N.M. 2015) (same). The Court finds this factor weighs in favor of Plaintiff.

The second factor also weighs in Plaintiff's favor because New Mexico has an interest in resolving disputes involving its residents, particularly where the dispute involves the application of New Mexico law. *See OMI Holdings, Inc.*, 149 F.3d at 1096 ("The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's law."); *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1062 (10th Cir. 2008) ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."). Similarly, the third factor weighs in Plaintiff's favor because it would be more convenient for Plaintiff to litigate in New Mexico since he is a New Mexico resident.

The fourth factor considers the interstate judicial system's interest in obtaining the most efficient resolution of controversies. The key points to consider when evaluating this factor are "the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1281 (10th Cir. 2005) (citation omitted). In this case, all four points favor Plaintiff: the evidence is likely to be located New Mexico; the alleged wrongs are to have occurred in New Mexico; New Mexico law is likely to

apply to Plaintiff's claims; and litigating this matter in New Mexico will avoid piecemeal litigation with potentially inconsistent results, given the interrelatedness of Plaintiff's claims against the three defendants. Finally, the fifth factor involves the analysis of the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies. *OMI Holdings, Inc.*, 149 F.3d at 1097. In other words, this factor focuses on whether the exercise of personal jurisdiction by a New Mexico court affects the substantive social policy interests of other states. *Id.* Because Plaintiff's claims involve New Mexico law and New Mexico residents, exercising personal jurisdiction in New Mexico would not affect the policy interests of other states. Therefore, this factor also weighs in Plaintiff's favor.

For the foregoing reasons, the Court concludes that Defendants TMX and Young have not established a compelling case that this Court's exercise of jurisdiction would offend traditional notions of fair play and substantial justice. In addition, the Court rejects Defendants TMX and Young's claim that the Court should not exercise personal jurisdiction because Plaintiff's First Amended Complaint only asserts conclusory allegations against the Defendants as a group. (Doc. 32) at 21-24; (Doc. 33) at 21-24. To the contrary, and as further set forth above, Plaintiff alleges that Defendants TMX and Young conduct their business operations through their subsidiaries, such as TitleMax, and these subsidiaries issue title loans "with exorbitant interest rates, and secured by the title to the borrower's vehicle." (Doc. 21) at 7. In the event a borrower cannot repay the loan, Plaintiff alleges that Defendants TMX and Young direct their subsidiaries through their policies and procedures to roll over borrowers' loans and reset the payment period. *Id.* at 11. Plaintiff claims this business system results "in a gross disparity between the value received by their customers and the price those customers pay," and that this disparity is based on "a top-down policy that is conceived by Young, implemented

through TMX, and applied to the consumer through regional agents and alter egos like TitleMax of New Mexico, Inc." *Id.* at 18.  These allegations are not conclusory and are sufficiently individualized as to each Defendant to allow a finding of personal jurisdiction.  *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (granting motion to dismiss in part because complaint failed to differentiate between the defendants).

    III.    *Conclusion*

Based on the foregoing, the Court concludes Plaintiff has made a sufficient *prima facie* showing that Defendants TMX and Young have sufficient minimum contacts with New Mexico for the Court to exercise jurisdiction over them, and that the Court's exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

IT IS THEREFORE ORDERED that Defendant TMX Finance LLC and Defendant Tracy Young's Second Motions to Dismiss for Lack of Personal Jurisdiction, (Docs. 32 and 33), are denied.

                                                                                         _____
                                                                                         UNITED STATES DISTRICT JUDGE