## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JESSE ROMERO,

     Plaintiff,

vs.                                                                          No. CV  17-00775 KG/SCY

TITLEMAX OF NEW MEXICO, INC.,

     Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Jesse Romero entered into three successive loan agreements with Defendant TitleMax of New Mexico, Inc. Each loan was secured by Plaintiff's car. Plaintiff's First Amended Complaint (FAC) alleged that all three loans were unconscionable under statutory and common law. After the Tenth Circuit resolved a dispute between the parties about whether Plaintiff could validly opt out of arbitration on the third loan, Plaintiff's claims on the first two loans were arbitrated. The resulting Arbitration Award found in favor of Defendant.

Now before this Court is Plaintiff's Second Amended Complaint (SAC) (Doc. 112), which focuses only on the third loan. The SAC repeats the same statutory and common-law unconscionability claims and adds a conversion claim. Defendant has filed four motions asking for either summary judgment or judgment on the pleadings on all five counts.[1] In its Preclusion

---

[1] TitleMax of New Mexico, Inc's First Motion for Partial Summary Judgment as to First, Second, Third, and Fourth Causes of Action in the Second Amended Complaint Based on Claim Preclusion (Res Judicata) and Issue Preclusion (Collateral Estoppel) (Doc. 115) ("Preclusion Motion"); Defendant TitleMax of New Mexico Inc.'s Second Motion for Partial Summary Judgment as to the Fifth Cause of Action in Plaintiff's Second Amended Complaint [Doc. 112] for Conversion (Doc. 116) ("Conversion Motion"); and Defendant TitleMax of New Mexico, Inc.'s Third Motion for Partial Summary Judgment Based on Judicial Estoppel as to the First, Second, Third and Fourth Causes of Action in the Second Amended Complaint (Doc. 117) ("Judicial Estoppel Motion"); Defendant TitleMax of New Mexico, Inc.'s First Rule 12(c) Motion for Judgment on the Pleadings as to Plaintiff's Claim for Punitive Damages (Doc. 114) ("Punitive Damages Motion").

and Judicial Estoppel Motions, Defendant argues that the Tenth Circuit decision and the

Arbitration Award prevent further litigation. Defendant's Conversion Motion contends that there

are no genuine issues of material fact because Defendant lawfully accepted and retained

insurance proceeds distributed after the totaling of Plaintiff's car. Defendant's fourth motion asks

the Court for judgment on the pleadings on Plaintiff's punitive damages claim. All four Motions

are fully briefed.[2]

     After considering the parties' briefing, the record of the case, including the Arbitrator

Award, and the applicable law, the Court will grant Defendant's Conversion Motion, and will

deny Defendant's Preclusion, Judicial Estoppel, and Punitive Damages Motions.

## I.  Background

### Factual Background

     Facts set forth in Defendant's Motions that are not specifically controverted by Plaintiff

are deemed undisputed. *See* D.N.M. LR-CIV 56.1(b). The following facts are undisputed, or

where disputed, are presented in the light most favorable to Plaintiff.

     Plaintiff obtained three loans from Defendant. He received Loan 1 in the amount of

$1005.00 on July 19, 2016. Loan 1 had an annual interest rate of 156.4484 percent. On August 6,

---

[2] *See* Plaintiff's Response To Defendant's First Motion for Judgment on the Pleadings as to Plaintiff's Claim for Punitive Damages (Doc. 118); Plaintiff's Response to Defendant's Motion for Partial Summary Judgment on Plaintiff's First Four Causes of Action (Doc. 119); Plaintiff's Response to Defendant's Motion for Partial Summary Judgment on Plaintiff's Fifth Cause of Action (Doc. 120); Plaintiff's Response to Defendant's Motion for Partial Summary Judgment on the Theory of Judicial Estoppel (Doc. 121); Defendant TitleMax of New Mexico, Inc.'s Reply in Support of Its First Motion for Partial Summary Judgment as to First, Second, Third and Fourth Causes of Action in the Second Amended Complaint Based on Claim Preclusion (Res Judicata) and Issue Preclusion (Collateral Estoppel) (Doc 122); Defendant Title of New Mexico, Inc.'s Reply in Support of its Second Motion for Partial Summary Judgment as to the Fifth Cause of Action in Plaintiff's Second Amended Complaint [Doc. 112] for Conversion (Doc. 123); Defendant TitleMax of New Mexico, Inc.'s Reply in Support of Its Third Motion for Partial Summary Judgment on the Theory of Judicial Estoppel (Doc. 124).

Defendant did not file a reply on its Punitive Damages Motion. On August 16, 2021, Defendant filed a notice of briefing complete. *See* Doc. 125.

2016, Plaintiff obtained Loan 2 for $2074.26, which paid off Loan 1 and gave him additional

cash. Loan 2 had an annual interest rate of 144.0365 percent. Almost nine months later, on May

15, 2017, Plaintiff obtained Loan 3 for $1940.44. Loan 3 paid off Loan Two and had an annual

interest rate of 144.4116 percent. *Romero v. TitleMax of New Mexico, Inc.*, 762 F. App'x 560,

562 (10th Cir. 2019). [3]  On Loan 3, Plaintiff did not receive any additional cash. Doc. 116-2 at 1-

2.

All three loans were secured with Plaintiff's vehicle, a Jaguar, and all had the same

material terms, headings, clauses, and title. *Romero*, 762 F. App'x at 562.  The loans differed

only in their amounts, identifying loan numbers, interest rates, and dates signed. Each loan

agreement had a "Waiver of Jury Trial and Arbitration Provision" (Arbitration Clause). *Id.*

The Arbitration Clause stated that unless the loanee opted out, all disputes concerning the

loan would be resolved through arbitration. *Id.* To opt out, the Arbitration Clause required a

loanee to notify Defendant within 60 days after signing the loan agreement. *Id.* On Loan 1 and

Loan 2, Plaintiff did not opt out of arbitration. *Id.* On Loan 3, Plaintiff sent compliant written

notice to Defendant that he was exercising his opt out right. *Id.*

In June 2018, Plaintiff defaulted on Loan 3. Doc. 116-2 at 1-2. On April 8, 2019, the

Jaguar, which was insured, was totaled in an accident. Doc. 112 ¶ 54. Defendant was a lienholder

on the vehicle. Doc. 16-1 at 1. The insurance company paid the insurance proceeds totaling

$2073.54 to Defendant as lienholder. Doc. 116-3 at 1. The proceeds did not cover all sums owed

on Loan 3 and a balance of $403.23 remained, which Defendant wrote off, completely releasing

Plaintiff of any future monetary loan obligations. Doc. 116-2 at 1-2.

---

[3] The Tenth Circuit opinion is docketed at Doc. 72-1.

**Procedural Background**

On June 20, 2017, Plaintiff filed a class action complaint against Defendant in the First Judicial District Court of New Mexico. *See* Doc. 1-3 at 5. The Complaint alleged three claims under the New Mexico Unfair Trade Practices Act, § 57-12-1 et seq. (NMUPA) and two common-law unconscionability claims. *Id.* Defendant timely removed the case to the United States District Court for the District of New Mexico based on diversity jurisdiction and/or federal question jurisdiction under the Class Action Fairness Act. Doc. 1. On August 4, 2017, Defendant filed a Motion to compel Plaintiff to arbitrate all three of his loans under the Arbitration Clause. (Doc. 9).

On August 25, 2017, Plaintiff filed an amended complaint (FAC) (Doc. 21). Defendant filed an answer to the FAC on September 29, 2017. Doc. 30.

On May 2, 2018, after a telephonic motion hearing, the Court entered an Order that compelled arbitration on two of the three loans but exempted the third loan. Doc. 56.

On May 22, 2018, Plaintiff appealed the Order compelling arbitration. *See* Doc. 59. On February 5, 2019, the Tenth Circuit affirmed the ruling. *See Romero,* 762 F. App'x at 560. The mandate was docketed on February 27, 2019. *See* Doc. 72.

On October 18, 2019, Arbitrator John A. Darden (Arbitrator) conducted a telephonic arbitration hearing. Doc. 73 at 2. Prior to the hearing, both parties were given the opportunity to request an in-person evidentiary hearing. *Id.* Neither did so. *Id.* At the hearing, the Arbitrator considered the briefs and exhibits. Each party had the opportunity to argue his client's position. *Id.* On November 11, 2019, the Arbitrator, entered an Arbitration Award in favor of Defendant. *Id.* The parties stipulated to the Court's entry of a Court Order under the Federal Arbitration Act,

9 U.S.C. § 1 et seq., and on November 15, 2019, this Court entered a judgment and Order

confirming the Arbitration Award. *Id.* at 5.

On August 12, 2021, Plaintiff filed his Second Amended Complaint ("SAC"). *See* Doc.

112. The SAC dropped Plaintiff's class action claims.[4]

### Plaintiff's Claims

The SAC includes four unconscionability claims. These claims are substantively the same

as the claims in the FAC. Count I and Count II allege violations of NMUPA which prohibits

"[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any

trade or commerce." § 57-12-3. Count I alleges that Debtor engaged in an unconscionable trade

practice in "the extension of credit or the collection of debts" in violation of §§ 57-12-2(E)(1).

To establish a violation under this subsection "there must be substantial evidence that the

borrowers lacked knowledge, ability, experience, or capacity in credit consumption; that

[d]efendants took advantage of borrowers' deficits in those areas; and that these practices took

advantage of borrowers to a grossly unfair degree to the borrowers' detriment." *State ex rel. King

v. B & B Inv. Grp., Inc.*, 329 P.3d 658, 665 (N.M. 2014). Plaintiff asserts that Defendant violated

§ 57-12-2(E)(1) by convincing Plaintiff to take Loan 3 even though it was to his financial

detriment. Doc. 112 ¶ 41.

Count II alleges that Defendant's extended credit in a manner that "results in a gross

disparity between the value received by a person and the price paid" in violation of § 57-12-

2(E)(2). To demonstrate a violation of § 57-12-2(E)(2), a plaintiff must show (1) "an oral or

written statement, visual description or other representation . . . that was either false or

---

[4] The SAC's allegations are made solely against Defendant and dropped any claims against other defendants named
in the FAC.

misleading"; (2) "knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or ...collection of debts," (3) that occurred in the regular course of business, and (4) "that must have been of the type that may, tends to or does, deceive or mislead any person." *Ashlock v. Sunwest Bank of Roswell*, 753 P.2d 346, 347 (N.M. 1988) *overruled on other grounds by Gonzales v. Surdgidev Corp.*, 899 P2d 576 (N.M. 1995). Here, Plaintiff argues that Defendant's loans were oversecured, charging an interest rate ten times more than traditional lending institutions. *Id.* ¶¶ 43-48.

Defendant's next two counts allege that Defendant engaged in unconscionable practices prohibited by the common law. "Unconscionability is an equitable doctrine, rooted in public policy, which allows courst to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Peavy by Peavy v. Skilled Healthcare Grp., Inc.,* 470 P.3d 218, 221 (N.M. 2020) (quoting *Cordova v. World Fin. Corp.,* 208 P.3d 901, 907 (N.M. 2009). The doctrine of contractual unconscionability can be analyzed from both procedural and substantive perspectives. *Fiser v. Dell Computer Corp.*, 188 P.3d 1215, 1221 (N.M. 2008). The party alleging unconscionability bears the burden of proof. *Id.*

Count III focuses on procedural unconscionability, which "examines the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other." *Peavy,* 208 P.3d at 907-908 (further citation omitted). Plaintiff argues that Defendant's loans were procedurally unconscionable because (1) "Defendant conducts its business by way of contracts of adhesion," (2) "conducts no underwriting of any kind," and (3) "engages in business practices intentionally designed to trap its customers." Doc. 112 ¶ 50.

6

Count IV alleges substantive unconscionability which scrutinizes "the legality and fairness of the contract terms themselves." *Peavy,* 470 P.3d at 222 *(quoting Cordova,* 208 P.3d at 908). To determine whether a contract is substantively unconscionable, a court should focus on "whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns. *Id.* (citing *Guthmann v. LaVida Llena,* 709 P.2d 675, 680 (N.M. 1985)). Plaintiff alleges Loan 3 was substantively unconscionable because it was (1) "oversecuritized," (2) "there was no justification, legal or otherwise for the high interest rates Defendant charges," and (3) "Defendant's amortization of its loans in conjunction with the number of rollovers in which Defendant knows or should know a typical borrower will engage guarantee that Defendant's borrowers receive very little value." Doc. 112 ¶ 52.

Count V alleges that Defendant is liable for conversion, because after Plaintiff's car was totaled, Defendant received the insurance proceeds. *Id.* ¶¶ 54, 55.

Plaintiff asks for rescission of the third loan agreement, restitution to Plaintiff of amounts paid on Loan 3, restitution to Plaintiff for the insurance proceeds Defendant received for Plaintiff's vehicle, treble damages, punitive damages, permanent injunctive relief, costs and attorney's fees and prejudgment and post-judgment interest. Doc. 112 ¶ 57.

## II. Legal Standards

### Summary Judgment

In this diversity case, Defendant's Preclusion, Judicial Estoppel, and Conversion Motions ask for summary judgment on Plaintiff's state law claims. "[I]n a federal diversity action, the district court applies state substantive law—those rights and remedies that bear upon the outcome of the suit—and federal procedural law—the processes or modes for enforcing those

7

substantive rights and remedies." *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018). This means that when considering a summary judgment motion a federal judge "will look to [state law] to determine what elements the plaintiffs must prove at trial to prevail on their claims" but "exclusively to federal law to determine whether plaintiffs have provided enough evidence on each of those elements to withstand summary judgment." *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1129 (10th Cir. 2009) (internal citations omitted).

A court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Wolf v. Prudential Ins. Co of Am.*, 50 F.3d 793, 796 (10th Cir. 1995) (quotation omitted).

When applying this standard, the Court examines the factual record and reasonable inferences in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). "Once the moving party has met its burden, the burden shifts back to the nonmoving party to show that there is a genuine issue of material fact." *Jensen v. Kimble*, 1 F.3d 1073, 1077 (10th Cir. 1993) (citing *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)). Disputes are genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and they are material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (further citation and internal quotation marks omitted).

**Judgment on the Pleadings**

The Punitive Damages Motion seeks judgment on the pleadings. At any time after the pleadings are closed, but before trial begins, a party may move for judgment on the pleadings under Federal Rule Civil Procedure (Rule) 12(c). When determining whether dismissal of a cause of action is proper under Rule 12(c), a federal court applies federal law. *See Stickley v. State Farm Mut. Auto Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007)*; see also Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1099 (10th Cir. 2017) (applying federal standards to motion to dismiss). And a federal court exercising diversity jurisdiction applies the substantive law of the forum state. *Boyd Rosene & Assocs., Inc., v. Kansas Mun. Gas Agency*, 123 F.3d 1351, 1352 (10th Cir. 1997).

A motion for judgment on the pleadings is evaluated under the same standard used in deciding Rule 12(b)(6) motions to dismiss. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (further citation omitted). "The claim is plausible only if it contains sufficient factual allegations to allow the court to reasonably infer liability." *Moya v. Garcia,* 895 F.3d 1229, 1232 (10th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)). The term "plausible" does not mean "likely to be true." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

## III. Analysis

### A. Preclusion Motion

Defendant's Preclusion Motion asks for summary judgment on all of Plaintiff's unconscionability claims. Defendant argues that the doctrines of either claim preclusion or issue preclusion, also known as res judicata or collateral estoppel, prevent further litigation, because the Arbitration Award necessarily decided all factual and legal issues relating to Loan 3. Doc. 115 at 1-2. Plaintiff counters that the Arbitration Award does not make findings as to Loan 3 and "does not bind or even guide the Court in its independent analysis of that third loan." Doc. 119 at 1.

#### *The Arbitration Award*

As an initial matter, the Court must determine whether the Arbitration Award may have preclusive effect on matters before this Court. The arbitration clause in the loan documents provides that arbitration will be conducted under the rules of the Federal Arbitration Act. Doc. 116-1 at 3. But the applicable substantive law regarding preclusion are those of New Mexico. *E.g.*, *Lewis v. Cir. City Stores, Inc.*, 500 F.3d 1140, 1147 (10th Cir. 2007) (quoting *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (further citation omitted) "(In deciding 'the claim-preclusive effect of a federal diversity judgment,' [courts] generally 'adopt the law that would be applied by state courts in the State in which the federal diversity court sits.'").

New Mexico courts give preclusive effects to arbitration awards if the "arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings." *Rex, Inc. v. Manufactured Hous. Comm. of State of N.M., Manufactured*

10

*Hous. Div.*, 892 P.2d 947, 952 (N.M. 1995). When considering whether to give an arbitration award preclusive effect, a court should examine "the formality of the proceedings, the scope of the arbitration, and the definiteness of the decision." *Rex, Inc.*, 892 P.2d at 952.

The claims on Loan 1 and Loan 2 arose out of the FAC. During the arbitration proceedings, the Arbitrator considered the briefs, the exhibits, and the affidavits by Plaintiff and by the Plaintiff's expert. Both parties had the opportunity to argue their case before the Court. The Arbitration Award includes findings of fact and conclusions of law. The Court finds that the arbitration proceedings were thorough and substantially similar to judicial proceedings. Without objection from either party, the Court confirmed the Arbitration Award, ordering that it "shall have the same force and effect, in all respects, as, and be subject to all provisions of the law." If otherwise meeting all the requirements of the issue and preclusion doctrines, matters necessarily considered and decided in the Arbitration Award that are relevant to matters before this Court may have preclusive effect.

### Claim Preclusion

Claim preclusion bars claims that were brought or could have been brought in prior legal proceedings. Once again, the Court applies New Mexico law to the issue of claim preclusion. *Lewis*, 500 F.3d at 1147. In New Mexico, a party asserting claim preclusion must show that "(1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits." *Potter v. Pierce*, 342 P.3d 54, 57 (N.M. 2015). A claim is precluded "'when there has been a full and fair opportunity to litigate issues arising out of that claim.'" *Kirby v. Guardian Life Ins. Co. of Am.*, 231 P.3d 87, 105 (N.M. 2010) (quoting *Bank of Santa Fe v. Marcy Plaza Assocs.*, 40 P.3d 442 (N.M. Ct. App. 2001) (further citation omitted); *see also Tafoya v. Morrison*, 389 P.3d 1098,

11

1113 (N.M. Ct. App. 2016) (observing "[w]hether the parties had a full and fair opportunity to litigate their issues is an overarching concern in evaluating res judicata."). Whether the elements of claim preclusion are met is a legal question. *Kirby*, 231 P.3d at 105.

The parties agree there was a final judgment on the earlier action on the merits and that the parties are the same. They disagree about whether the cause of action is the same in both suits and whether there has been a full and fair opportunity to litigate the Loan 3 claims. Plaintiff argues that "[t]he conscionability issues surrounding Plaintiff's third loan are not based on the same cause of action," so Plaintiff did not have "any opportunity to litigate the issues surrounding the third loan and its formation, much less a 'full and fair' opportunity to do so." Doc. 119 at 4-5. Defendant disagrees, arguing that "[t]he Loan 3 causes of action and issues are the exact same, and therefore Plaintiff should be barred from relitigating them." Doc. 122 at 2.

Both New Mexico and the Tenth Circuit use a transactional approach when determining whether there was a single cause of action. *Potter*, 342 P.3d at 57 (citing *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F2d 1329, 1335-36 (10th Cir. 1988) (further citation omitted). This approach examines whether "all issues aris[e] out of a 'common nucleus of operative facts.'" *Id.* (quoting *Anaya v. City of Albuquerque*, 924 P.2d 735 (N.M. Ct. App. 1996) (further citation omitted)). If so, then there is a single cause of action. *Id.* "The facts comprising the common nucleus should be identified pragmatically, considering (1) how they are related in time, space, or origin, (2) whether, taken together, they form a convenient trial unit, and (3) whether their 'treatment as a single unit conforms to the parties' expectations or business understanding or usage.'" *Id.*

The Court finds that Plaintiff's claims as to Loan 3 meet the first two prongs of the transactional test. The three loans are related in origin: Plaintiff took Loan 2 to pay off Loan 1

and Plaintiff took Loan 3 to pay off Loan 2. Together Plaintiff's claims concerning all three

loans are similar and as such, formed a convenient trial unit. While each loan agreement was a

separate individual loan agreement, they shared "the same material terms, headings, clauses, and

title (Loan Agreement), and varied only in the dates that they were signed, the identifying loan

numbers, the amount of the loan, and the interest rate charged." *Romero*, 762 F. App'x at 565.

Defendant argues that the interrelatedness of the loans means that Plaintiff cannot claim that he

did not expect the three loans to be treated as one unit. According to Defendant, "Plaintiff cannot

seek to avoid the preclusive impact of the arbitration by asserting something new about Loan 3,

because anything Plaintiff tries to claim now could have been claimed in the arbitration." Doc.

115 at 21.

But Defendant's analysis relies on the premise that the Arbitrator could have considered

and adjudicated Plaintiff's claim.[5] "'Essential to the application of the doctrine of [claim

preclusion] is the principle that the previously unlitigated claim to be precluded could and should

have been brought in the earlier litigation.'" *Lenox MacLaren Surgical Corp., v. Medtronic, Inc.*,

847 F.3d 1221, 1245 (10th Cir. 2017) (quoting *Plotner v. AT & T Corp*, 224 F.3d 1161, 1170

(10th Cir. 2000) (further citation omitted)). Significantly, Plaintiff did not agree to arbitrate the

third claim.

Arbitration is a matter of contract and as such it "does not operate without regard to the

wishes of the contracting parties." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52,

57 (1995). "[A] party cannot be required to submit to arbitration any dispute which he has not

---

[5] Defendant cites *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S.Ct. 1589, 1594-95 for this proposition. *Lucky Boy* emphasizes that "claim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Id.* at 1594. But *Lucky Boy* does not address the circumstances present here, an arbitrator who does not and could not have jurisdiction over a related claim.

agreed to submit." *ARW Expl. Corp. v. Aquirre*, 45 F.3d 1455, 1460 (10th Cir. 1995) (quotation marks and brackets omitted). Because Plaintiff reserved his right to proceed with claims on Loan 3 in this Court, the Arbitrator could not examine or decide any issue related to Loan 3. *See Lenox MacLaren Surgical Corp.*, 847 F.3d at 1245 ("If the arbitrator lacked authority to entertain the matters advanced in the later litigation, claim preclusion does not apply.") (further citation omitted). As the Arbitrator observed, Loan 3 was not before him which created a "complication for the arbitration." Doc. 73 at 3.

Moreover, applying claim preclusion to Loan 3 would effectively nullify Plaintiff's ability to exercise his right to bring his claims to a court. When considering the opt out clause in Plaintiff's loans, the Tenth Circuit declined to render "an entire clause in the third loan agreement meaningless" and gave "full effect to the parties' decision to include an opt-out provision in the third loan agreement's Arbitration Clause." *Romero*, 762 F. App'x at 565. Claim preclusion arising from the arbitration proceedings would make Plaintiff's decision to opt out equally as meaningless.

### *Issue Preclusion*

Alternatively, Defendant argues that issue preclusion bars all issues considered and decided by arbitration. Issue preclusion focuses on discrete issues and operates to keep "a party from re-litigating ultimate facts or issues actually and necessarily decided in a prior suit." *Deflon v. Sawyers*, 137 P.3d 577, 582 (N.M. 2006) (quoting *Adams v. United Steelworkers of Am.*, 640 P.2d 475, 479 (1982). In New Mexico, the party asserting the doctrine must show four elements:

> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation ....

14

*Ideal v. Burlington Res. Oil & Gas Co., LP*, 233 P.3d 362, 365 (N.M. 2010) (citation omitted). If even one element is not satisfied, the doctrine is inapplicable. Once the movant meets his burden and demonstrates all four elements, the nonmovant party may rebut the movant's case by showing that he did not have a full and fair opportunity to litigate. *See Shovelin v. Cent. N.M. Elec. Co-op*, 850 P.2d 996 (N.M. 1993). The Court must then consider whether "the application of [issue preclusion] would be fundamentally unfair and would not further the aim of the doctrine, which is to prevent endless relitigation." *State v. Bishop*, 832 P.2d 793, 735 (N.M. Ct. App. 1992).

Defendant has shown only the first of the four necessary elements: both parties participated in the arbitration proceeding. But, as required by the second element, Defendant has not shown that the cause of action in this case is different from the one before the Arbitrator. [6] Indeed, Defendant argues that the causes of action are the same. *See* Doc. 115 at 16 (stating that issues stated in FAC as to Counts I, II, IV, and V are "the exact same issues stated in Counts I, II, III, IV of the SAC").

Although one missing element prevents application of the doctrine, Defendant also did not meet his burden on elements three and four, Defendant argues that Plaintiff's unconscionability claims as to Loan 3 were actually litigated and necessarily determined because (1) the terms of Loan 3 are identical to the terms of Loan 1 and 2 and (2) the issues as to Loan 3

---

[6] The second element of the New Mexico issue preclusion test is not present in the federal test. *See Murdock v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 975 F.2d 683, 687 (10th Cir. 1992) (explaining four-part test, the last element requiring that the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue). New Mexico courts have not explicitly discussed the purpose of this second element. But New Mexico courts distinguish between the preclusion doctrines by noting that unlike claim preclusion, issue preclusion "does not require that both suits be based on the same cause of action." *Deflon*, 137 P.3d at 643 (citing *Adams*, 640 P.2d at 479). In most cases, if a party seeks to preclude the same issues in identical causes of action, claim preclusion, not issue preclusion, would apply.

in the SAC are the same issues related to Loans 1 and 2 in the FAC that were sent to arbitration."
Doc. 122 at 4. For support he cites the Restatement (Second) of Judgments § 27 (1982), which
advises, "[p]reclusion ordinarily is proper if the question is of the legal effect of a document
identical in all respects to another document whose effect was adjudicated in a prior action."
Doc. 115 at 19.

Notably, Defendant does not separate any of Plaintiff's four counts into their legal
components and their factual components, which essentially makes his issue preclusion
arguments reiterations of his claim preclusion arguments. In so doing, Defendant overlooks that
the legal effect of the loan agreements alone is not determinative of all of Plaintiff's claims. For
example, procedural unconscionability is a mixed question of law and fact. *See Peavy by Peavy
Skilled Healthcare Grp., Inc.*, 470 P.3d 218, 222 (N.M. 2020). A decision about whether Loan 3
is procedurally unconscionable depends both on the legal effect of the loan terms and on the
circumstances surrounding the formation of the loan. *Id.* While a similarity between the loan
terms is relevant, whether the circumstances are the same is a separate question.

Plaintiff has presented some evidence that the factual circumstances of Loan 3 differ
from those present in Loan 1 and Loan 2. Unlike Loan 1 and Loan 2, which were separated by 19
days, there was a much longer period between Loan 2 and Loan 3.[7] The length of time between
Loan 2 and Loan 3 meant that Plaintiff paid a significant amount to Defendant with very little
paid toward the principal. Finally, Plaintiff alleges that Defendant actively encouraged him to
roll over Loan 2 to Loan 3 and so took advantage of him. Notably, on the last issue, the

---

[7] As the Court has found that Defendant has not established the required elements for issue preclusion, the Court
will not delve into Defendant's argument about why the length of time between the loans does not matter. *See* Doc.
115 at 20.

Arbitrator made no findings, stating, "without testimony regarding [Defendant's] intention, the Arbitrator is left with looking at circumstantial evidence." Doc. 73 at 4.

Finally, even had Defendant demonstrated that the doctrine is applicable, the Court must consider the equities of the issue preclusion doctrine under these circumstances. Plaintiff reserved his right to litigate this claim in federal court. Allowing Defendant to truncate that right by foreclosing certain of Plaintiff's claims with issue preclusion would be fundamentally unfair.

## B. Judicial Estoppel Motion

Defendant's Judicial Estoppel Motion argues that either the judicial estoppel doctrine or the law of the case doctrine prevents Plaintiff from asserting that Loan 3 is a rollover or refinancing loan and asks that all relating SAC allegations be stricken on that basis. *See* Doc. 117 at 1. Judicial estoppel is an equitable doctrine that stops a party who takes a successful position in a legal proceeding from assuming a contrary position in a later proceeding that prejudices the opposing party, "'simply because his interests have changed.'" *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001). The doctrine's "'purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *New Hampshire*, 532 U.S. at 749-50 (internal citation and quotation omitted). Because the doctrine is meant to protect a court's integrity, in determining whether judicial estoppel is appropriate, a federal court presiding over a diversity proceeding should apply federal law. *Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007). "[T]he position to be estopped must generally be one of fact rather than of law or legal theory." *Johnson*, 405 F.3d at 1069. The Tenth Circuit has counseled that the judicial estoppel doctrine must be applied "both narrowly and cautiously." *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 12227 (10th Cir. 2011) (further citation

omitted). The burden is on the party asserting judicial estoppel to "point to clearly inconsistent statements in support of its arguments." *Vehicle Mkt. Rsch., Inc., v. Mitchel Int'l., Inc.*, 767 F.3d 987, 988 (10th Cir. 2014).

To apply the doctrine of judicial estoppel, Defendant first must establish that "a party's later position [is clearly] inconsistent with its earlier position." *New Hampshire*, 532 U.S. at 750. Defendant argues that Plaintiff took one position in an interlocutory appeal before the Tenth Circuit that is now inconsistent with the position he has taken before this Court. At issue in the appeal before the Tenth Circuit was whether Plaintiff could exercise his right to opt out of arbitration as provided in a clause in each of Plaintiff's three loans or whether the loans were interdependent, such that a failure to opt out of the first loan barred Plaintiff from opting out of successive loans. Defendant contended that because the purpose of each successive loan was to "refinance the previous loan," the loans were interdependent and Plaintiff's failure to opt out of Loan 1 or Loan 2 barred him from opting out of Loan 3. In contrast, Plaintiff argued that each loan was a separate new loan. Defendant interprets Plaintiff's argument as an assertion "that Loan 3 WAS NOT a refinance of Loan 2 which is inconsistent with his legal position that Loan 3 IS now a refinance of Loan 2." Doc. 124 at 3 (emphasis in original).

As an initial matter, the Court observes that the parties define "refinancing" differently. Defendant posits that a loan that refinances another makes the two loans interdependent. In this manner, Defendant conflates the purpose of the loan with the character of the loan. In contrast, Plaintiff separates the two. In his appellate brief, Plaintiff distinguishes between "modification" of the terms of a loan, which Plaintiff implies does not create a separate loan, and the formation of a successive independent loan. Before the Tenth Circuit, Plaintiff asserted that when the proceeds of one loan pay off a previous loan, the result is legally not a modification of the first

18

loan, but an extinguishment of the second.[8] Doc. 117-2 at 3-4. Notably, Plaintiff's arguments were about the legal character of the loan, not the reasons for its initiation.

Significantly, New Mexico statutorily requires the type of loan at issue here, an installment loan, to be a "new loan." Loan 3 falls under the New Mexico Small Loan Act, N.M.S.A. § 58-15-1 et seq. which is limited by the New Mexico Bank Installment Loan Act of 1959 (NMBIL). Section 58-7-1(F) of the NMBIL states that a *rollover, renewal, refinance or modification* of an existing loan agreement with a lender "shall constitute a new loan." N.M.S.A. § 58-7-7(F).[9] Therefore, a loan may be both a new loan and a refinancing or rollover loan.

Admittedly, Plaintiff uses the word "refinance" repeatedly through his Complaint without explicitly making this distinction, but substantively, he has not strayed from his argument that as a matter of law, the loans were separate, independent loans. This point is underscored by the fact that it is not Plaintiff, but Defendant that has argued that the type of loan is determined by its purpose, an assertion that Plaintiff has vehemently opposed. Plaintiff's arguments concerning his reasons for entering the Loan 3 are factual assertions that are not inconsistent with his argument that Loan 3 is a separate independent loan.

Alternatively, Defendant asserts that the law of the case doctrine applies. Whereas the judicial estoppel doctrine focuses on a factual position taken by a party, the "'law of the case' doctrine requires every court to follow the decisions of courts that are higher in the judicial hierarchy." *Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 711 (10th

---

[8] The Court acknowledges that it too has used the term "refinance" to distinguish an independent loan from a dependent loan. *See* Transcript of Telephonic Status Conference, Doc 68 at 11:10-12 But at no time has this Court found that as a matter of law a party's reasons for acquiring a second loan eliminates its independent character.
[9] The statute provides two exceptions: (1) when there is a modification to the loan without any additional cost to the consumer, *see id.*, and the second is when a borrower and lender "execute an extension agreement for the deferral of an installment payment. See N.M.S.A. § 58-7-3.2. Neither party argues that either exception applies here.

Cir. 2004) (quoting *Guidry v. Sheet Metal Workers Int'l Ass'n, Loc. No. 9*, 10 F.3d 700, 705 (10th Cir. 1993) (further citation omitted). The doctrine is applicable only when there is a "final judgment that decided the issue." *United States v. Bettenhausen*, 499 F.2d 1223, 1230 (10th Cir. 1974). "'When further proceedings follow a general remand, the lower court is free to decide anything not foreclosed by the mandate issued by the higher court.'" *Pittsburg Cty Rural Water Dist. No. 7,* 358 F.3d at 711 (quoting *Guidry*, 10 F.3d at 705). Under this discretionary doctrine "'a court should not reopen issues decided in earlier stages of the same litigation.'" *Johnson v. Champion*, 288 F.3d 1215, 1226 (10th Cir. 2002) (quoting *Agostini v. Felton*, 521 U.S. 203, 236 (1997); *see also Bishop v. Smith*, 760 F.3d 1070, 1082 (10th Cir. 2014) (observing doctrine is discretionary not mandatory).

Defendant observes that when examining whether the loans functioned independently, the Tenth Circuit rejected the argument that the loans were interdependent refinancing loans. For this reason, Defendant argues that law of the case bars Plaintiff's allegations that Loan 3 was a refinancing loan. Plaintiff counters that the facts considered by the Tenth Circuit in making a ruling about the effectiveness of each loans' arbitration clause does not bear on the scope of the loan or the procedural or substantive unconscionability of a loan.

The Tenth Circuit did acknowledge Defendant's argument that Loan 3 was a refinancing loan tethered to Loan 2, but the Tenth Circuit rejected Defendant's argument that the purpose of the loan dictated the arbitration question. *See Romero*, 762 F. App'x at 564 (observing "whether the third loan agreement is a refinancing of the second loan agreement is actually a dispute about the coverage, scope, or another part (the opt-out provision of the Arbitration Clause)" which "under the plain language of the Arbitration clause [was] a dispute for a court to decide, not an arbitrator)". Focusing solely on the terms in each loan agreement, the Tenth Circuit recognized

that "all three loan agreements were separate, individual agreements because each contained different identifying loan numbers, assessed different interest rates, and lent different amounts of money" as well as contained "its own, albeit identical arbitration clause." *Id.* at 565. As each individual loan had an arbitration clause, the Tenth Circuit concluded that the Arbitration Clause in each separate loan agreement must mean "*something*." *Id.* (emphasis in the original). On that basis, the Tenth Circuit held that each loan's arbitration opt-out clause effectively gave Plaintiff a right to opt out of arbitration each time a new loan was formed. *Id.* Significantly, at no point, did the Tenth Circuit examine the scope or coverage of the loans or the circumstances surrounding the formation of the loans.

Defendant has not met his burden and demonstrated that Plaintiff made any inconsistent statement of fact about Loan 3 nor has Defendant shown that the Tenth Circuit's ruling explicitly or implicitly relied on determinations about whether Loan 3 was a refinancing loan or a rollover loan. Neither the law of the case nor the judicial estoppel doctrines apply.

## C.  The Conversion Motion

After Plaintiff's insured car was totaled in an accident, the insurance company paid the policy proceeds to Defendant, based on its security interest in the vehicle. Plaintiff argues that in accepting the proceeds, Defendant committed the tort of conversion. Conversion is "'the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made.'" Defendant seeks summary judgment on this claim. As a matter of law, Defendant states, its perfected interest in the car coupled with the outstanding balance on Plaintiff's loan gave Defendant a right to the insurance proceeds. *See* Doc. 116 at 5. The Court agrees.

21

To prevail on this claim, Plaintiff must show that Defendant wrongfully accepted and retained the insurance proceeds even after demand has been made. Generally, "[a] secured seller has a security interest in insurance proceeds up to the extent of the loss." *Jaramillo v. Gonzales*, 50 P.3d 554, 563 (N.M. 2002). Although Plaintiff admits that Defendant had a perfected security interest in the vehicle, he contends that the security interest was invalid and the contract void because the loan was unconscionable, unlawful, and unenforceable. He cites *Cordova*, 470 P.3d 218, in support. But *Cordova* is inapposite.

In *Cordova*, the specific issue before the NMSC was whether an arbitration clause in a contract was unconscionable. The Court found that the arbitration clause the defendant imposed on its borrowers "is so unfairly and unreasonably one-sided that it is substantively unconscionable." *Id.* at 265. The Court then considered the "possible remedial actions . . .to give effect to [its] holding . . . ." *Id.* at 266. The Court listed the following remedies for an unconscionable contract: (1) [the] court may refuse to enforce the contract; or (2) the court may enforce the remainder of the contract without the unconscionable term; or (3) the court may "so limit the application of any unconscionable term as to avoid any unconscionable result." *Id.* Nothing in *Cordova* addresses whether a secured lender commits conversion when a debtor defaults and subsequently the secured lender received proceeds from the perfected security interest.

Plaintiff has not cited, and the Court can find no case where a secured party with a perfected security interest was found liable for conversion when after a default it repossessed collateral. Nor has Plaintiff shown that there is a dispute about whether Defendant wrongfully kept the insurance proceeds.

Even if Defendant was in wrongful possession of the proceeds, Plaintiff has not

established a conversion claim. Plaintiff has not alleged that he asked that the insurance proceeds

be delivered to him. "[W[here a defendant is rightfully in possession of property, the demand

must be made before the action for conversion is brought." *Nosker v. Trinity Land Co.*, 757 P.2d

803, 809 (N.M. 1988). Rather, the evidence shows that Plaintiff consented to Defendant

receiving the proceeds. A letter from Defendant to the insurance company states that the

insurance proceeds for the totaled vehicle should be sent to [one of Defendant's] stores at an

Albuquerque location. Doc. 116-6 at 1. The letter further states that "[t]his arrangement has been

agreed upon by counsel for both [Defendant] and [Plaintiff]." *Id.*

Because as a matter of law, Defendant did not have wrongful possession of the insurance

proceeds, there is no material issue of fact on this necessary element of Plaintiff's conversion

claim.

**D. Punitive Damages Motion**

Plaintiff's two statutory claims under NMUPA seek treble damages whereas Plaintiff's

two common-law conscionability claim ask for punitive damages. Defendant argues that the

SAC relies on the same conduct for all claims. In *Hale v. Basin Motor Co.*, 795 P.2d 1006 (N.M.

1990). the New Mexico Supreme Court held that it was improper for a plaintiff to recover both

statutory treble damages and punitive damage for the same conduct.  As a result, Defendant's

Punitive Damage Motion argues that Plaintiff has not plausibly stated a claim for common-law

punitive damages. Plaintiff disagrees with Defendant's interpretation of *Hale* and argues that

*Hale* recognized that a party could not pursue duplicate damages, "a party may pursue

overlapping claims through trial and must only elect an award after it has been made." Doc. 118

at 2. Plaintiff correctly reads *Hale*.

In *Hale*, the plaintiffs bought claims under the NMUPA and common-law fraud. After a

bench trial, the court entered findings of facts and conclusions of law in favor of the plaintiffs. *Id.* at 1009. The court awarded damages under the NMUPA but made no findings about plaintiffs' fraud claims. Both parties appealed. *Id.* According to the *Hale* defendant, the court erred when it found that defendant violated the Unfair Trade Practices Act, awarded damages, trebled those damages, and awarded costs. *Id.* The plaintiffs cross appealed arguing that "the court erred by (1) using the wrong measure of damages, (2) excluding common-law fraud and punitive damages from the judgment, and (3) failing to award as costs 'lost paid vacation time.'" *Id.*

The New Mexico Supreme Court reversed, in part, based on plaintiffs' common-law fraud argument, holding that the trial court should have considered whether there had been fraud and whether damages were appropriate. *Id.* at 1012. The Court observed that "New Mexico does not allow duplication of damages or double recovery for injuries received." *Id.* at 1012 (citing *Hood v. Fulkerson*, 699 P.2d 608 (1985). But the prohibition against duplication does not mean that a plaintiff may not at the onset of the case ask for damages for both claims. "When a party may recover damages under separate theories of liability based upon the same conduct of the defendant, and each theory has its own measure of damages, the trial court may make an award under each theory. In that event the prevailing party must elect between awards that have duplicative elements of damages." *Id.* at 1012.

As explained by *Hale*, Plaintiff may seek damages on all his claims, even those that rely on the same conduct. But should Plaintiff prevail on more than one of those claims, Plaintiff must elect a single remedy.

**IV. Conclusion**

Plaintiff reserved his right to pursue his Loan 3 claims in district court. Because Plaintiff

chose a different forum for Loan 3, the Plaintiff did not agree to, nor did the Arbitrator have the jurisdiction to consider matters relating to Loan 3. The Court further finds that Plaintiff did not have a full and fair opportunity to litigate Loan 3, so the application of either claim preclusion or issue preclusion to Plaintiff's Loan 3 unconscionability claims would be fundamentally unfair.

Defendant has not shown that the doctrines of judicial estoppel or law of the case are relevant to the Court's determination about whether Loan 3 was a refinancing or rollover loan. The Tenth Circuit did not make any findings in Defendant's appeal that conclusively decided that issue. Furthermore, Plaintiff did not advocate inconsistent positions regarding the purpose of the loan. As the doctrines are inapplicable, the Court will deny Defendant's Judicial Estoppel Motion.

To prove conversion, a plaintiff must establish that a defendant wrongfully or illegally holds or retains property of another. There is no dispute that Defendant had a perfected security interest in Plaintiff's car which gave him a right to insurance proceeds after the vehicle was totaled. And the record indicates that Plaintiff never demanded that Defendant turn over the proceeds to him. Rather, the evidence showed that Defendant acquiesced to the remittance of those proceeds to Plaintiff. There are no material facts in dispute, and the Court will grant Defendant's Conversion Motion.

Defendant's Punitive Damages Motion asks the Court to find that Plaintiff has not made a plausible punitive damages claim because should Plaintiff be successful on both his statutory and common-law claims, Plaintiff is prohibited from receiving duplicative awards. But Defendant's Motion does not acknowledge that while Plaintiff cannot accept two awards based on the same conduct, Plaintiff may pursue both remedies. Only at the conclusion of the trial with a successful verdict on both claims, must Plaintiff make a choice as to remedies. For this reason, the Court

will deny Defendant's Punitive Damages Motion.

IT IS ORDERED that:

1.      TitleMax of New Mexico, Inc's First Motion for Partial Summary Judgment as to First, Second Third, and Fourth Causes of Action in the Second Amended Complaint based on Claim Preclusion (Res Judicata) and Issue Preclusion (Collateral Estoppel) (Doc. 115) is DENIED;

3.      Defendant TitleMax of New Mexico, Inc's Third Motion for Partial Summary Judgment based on Judicial Estoppel as to the First, Second, Third and Fourth Causes of Action in the Second Amended Complaint (Doc. 117) is DENIED;

3.      Defendant TitleMax of New Mexico, Inc.'s Second Motion for Partial Summary Judgment as to the Fifth Cause of Action in Plaintiff's Second Amended Complaint [Doc. 112] for Conversion (Doc. 116) is GRANTED;

4.      Defendant TitleMax of New Mexico, Inc.'s First Rule 12(c) Motion for Judgment on the Pleadings as to Plaintiff's Claim for Punitive Damages (Doc. 114) is DENIED.


UNITED STATES DISTRICT JUDGE